UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARL JACKSON

                            CIVIL ACTION NO. 05-1856(RJL)

      Plaintiff,

V.

GEORGE W. BUSH, Et, Al.,

      Defendants.


**PLAINTIFF'S MOTION IN OPPOSSITION TO MOTION TO DISMISS**

COMES NOW, the Plaintiff Carl Jackson in opposition to defendants motion to dismiss and in support of motion in opposition plaintiff would state the following grounds in support thereof :

1. See attached memorandum of law.

                                      Respectfully submitted,

                                By: _____
                                   CARL JACKSON
                                   P.O. Box 2894
                                   Tampa, Florida 33601
                                   813-380-8757


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and complete copy of the above document has been furnished on this the 30th day of December, 2005 to: John F. Henault, Assistant United States Attorney 555 4th street, NW Washington, D.C. 20530.

                                         _____
                                         CARL JACKSON

**RECEIVED**

JAN 3 - 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CARL JACKSON,
Pro Se  Plaintiff


    v.                              Case No.05-1856(RJL)


GEORGE W. BUSH,
President
United States of America, Et Al.,

        Defendants


## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### FACTS

That on or about September 24, 1999 Plaintiff filed section 1983 Complaint in United States District Court for the Middle District of Florida Tampa Division challenging the constitution of Florida Sexual Offender registration laws  said case was subsequently consolidated with a later filed complaint on or about a result of plaintiff 2002  discovery of witness tampering during the course of his 1992 state trial said complaint by several Hillsborough county officials including  then  assistant state prosecutor Christine Vogel  Tampa police Chief Bennie
Holder and Florida Department of Corrections Probation

Official Robert Anderson to have citing constitutional violation of plaintiffs Sixth Amendment right to have compulsory assistance of process of witnesses against said alleged deprivation albeit discovered by plaintiff in 2002 chilled plaintiffs right to a fair trial in 1992 and contributed to the ineffectiveness of plaintiffs counsel. During the pendency plaintiffs district court proceedings plaintiffs automobile was deliberately crashed into in retaliation by on June 12,2003 in Tampa Florida in retaliation for plaintiffs challenging the constitutionality of Florida Sex Offender Laws and his challenge to the legitimacy of his 1992 conviction and Florida's policy of voter disfranchisement of voters said deliberate accident severely injuring plaintiffs loved- one Eleanor Roe Munzer who past then passed away twenty -days after on July 8, 2003.

The driver of the vehicle which deliberately struck plaintiffs vehicle in retaliation is Brandi Spahr is a former Manatee County, Florida resident now living in Tennessee since the deliberate 2003 crash discovery is made which establishes linkage between driver Spahr indicating and a close nexus familiar relationship via marriage of her family members residing in the Tampa bay area to Richard E. Davis of Apollo Beach whose step-son ( Courtland Hoggan)

2.

was the missing witness in plaintiffs 1992 state trial who was purposely taken into protected custody by the Tampa Police department and booked into the Hillsborough County Jail at the detriment of this plaintiff and held there under the connived charge of a domestic battery on March 8, 1992 along with his co-defendant wife Tara Jean Anderson ( daughter of Florida Department of Correction probation official Robert Anderson)who also had a lot to lose if her co-defendant husband testified at my March 9, 1992 was also taken into custody on March 9, 1992 the charge subsequently was noll processed by the Office of State Attorney and spared from testifying in order to shield (Hoggan) from having to divulge details of the plea bargain that he entered into which resulted in his own 1992 conviction for conspiracy to traffic in illegal drugs ( he pled to a reduced offense) which had the potential of being subject to withdrawal by the Pinellas County prosecutors upon any testimony or disclosure under sworn oath by the witness Hoggan of other drug related crimes that he and his co- defendant may have committed in their county since it was in the date of his required testimony was still within 30-days time frame that the prosecutors could have used in order to appeal their plea bargain with Hoggan in 2002

3.

Plaintiffs discovery of the 1992 Sixth Amendment right violation of hiding a witness until my trial was over was accomplished with the aide of members of the Hillsborough County Sheriff department members specifically Sheriff Officials Paul T. Davis ( who would have final say as to any automobile accident investigation) to be initiated within his district of command which encompass the location of the June 12, 2003 Tampa crash and his distant relative by marriage intertwined by marriage to family members of Brandi Spahr additionally Hillsborough County Sheriff Bill Davis also is alleged to bear a close nexus relationship to Richard E. Davis of father of (Courtland Hoggan) the missing accuser at this plaintiffs 1992 trial additionally plaintiff as a result of the deliberate crash as plaintiff was forced to forgo the pursuit of his 1983 claim filed in 2002 which was dismissed by the district court shortly after the deliberate crash on or about November 7, 2003 in order to concentrate on issues relating to the grieving process also as result of the deliberate retaliatory crash the passing of plaintiffs loved one that defendants officials within the Tampa Law enforcement community specifically the Tampa police department , Hillsborough County Sheriff Department and Troop C of the Florida Highway Patrol (FHP) deliberate act of turning a blind eye by causing

4.

deliberately deficient investigation to the deliberate crash and gave encouragement by their unlawful official acts to defendant Spahr and her Florida vigilante co-conspirators creating a chilling effect on plaintiffs 2002 First Amendment exercise critical of the officials involved in the deprivation of his Sixth Amendment right to compulsory assistance of process said criticism was clearly a established First Amendment right of plaintiff to challenge the constitutionality of Florida Sex offenders registration laws in Florida the process is if a citizen has a complaint against a law enforcement agency they can either notify the agencies internal affairs department of the respective police agencies or the Florida Department (FDLE) a Florida Law Enforcement agency at the time of the on June 12, 2003 retaliatory crash plaintiff was in court proceedings against the FDLE in the Middle District Court Tampa division for maintaining of plaintiffs personal information on it sex offender website which now includes maps to plaintiffs home in fact the in the past administrative clerk at that FDLE agency has at times engaged in heated words with each other over the FDLE agencies handling of plaintiffs personal information the FDLE clerk at the FDLE Tampa officer (Ms. Gambino) and her neighbor in 2003 is ( Joan Pizzurro) the driver of the

third car involved in the June 12, 2003 crash that pushed my car being driven by Eleanor Roe Munzer from behind into the direction of the speeding car driven by Pizzurro co-defendant Brandi Spahr in retaliation plaintiff further alleges that as a result of the current administration domestic policy of data mining for negative information individual they consider unfriendly to the administration that defendants Libby and Rove are now alleged to have delved into the earlier years of more then
thirty years ago when plaintiffs live in Providence Rhode Island and they obtained information that plaintiff while a resident of Rhode Island in 1982 plaintiff tendered a check as payment for freight to a trucking driver working at that time for Cole trucking Co said trucker bear a close nexus relationship to Natalie Pearson whose 10-year old daughter was mentioned by defendant President George W. Bush in seventy-seven words spoken during the course of his January 21, 2004 State of The Union Address
as a result of mathematical miscalculation plaintiff business check failed to clear his bank which was returned to the trucking agent for Cole Trucking company for non-payment by plaintiff bank plaintiff did however make full restitution for the check through payment made to the Rhode Island probation Department in 1982-84 and was released from

6.

probation after he had met all conditions imposed upon him by the Rhode Island Superior court  and to be free from the June 12, 2003  plaintiff has a clear First Amendment clearly established right to speak out in dissent without fear of retaliation by vigilantes by a public officials for speaking out in dissent against Florida Governor Jeb Bush policy of failure to correct Florida policy of voter disfranchisement. a result of plaintiffs 1992 conviction for attempted sexual battery which is a conviction that as it goes forth today is tantamount to being based on one persons word alone ( not even the alleged victim )and even the lone witness it has been discovered  disavowed statements attributed to him during his deposition in 1992 placed in the police report and ill-characterizes as some sort of confession by this plaintiff .

In short the officer put things into the report that the lone witness denies  saying  ( absent the missing witness Hoggan) said dissent by  plaintiff expressed in his challenge to the constitutionality of a Florida law and the legitimacy of his 1992 conviction in the courts is a clearly a protected First Amendment activity .

Plaintiff would further state that the legal issues now before the court would not be if not for  one fact alone that plaintiff is a current resident of Florida a state

7.

whose Governor happens to have a sibling brother who is the President of the United States and that ,defendant George W. Bush without due process of law used his position to contribute to the stifling of plaintiff's clearly established right to speak out in dissent against his brother Florida Governor Jeb Bush policy of voter disfranchisement as a result of his undiminished influence over to the United States Department of Justice by virtual of his sole control of the appointment process of the United States Attorney General defendant John Ashcroft former Attorney General of the United States and past member of the President's Cabinet. Plaintiff additionally would state that plaintiff loved-one developed in her mind over her lifespan at times a difficult to understand misconception that the FBI and the Secret Service in the Tampa, Florida area were to be more accessible to her then what they are statutory required and as best as plaintiff sought to explain this to his loved one Mrs. Munzer but there were numerous time when plaintiff would return home and find her engaged in phone conversation with members of the Tampa office of both the FBI and Secret Service as well as times she was appeared upset because of her failure to get through to the Tampa offices of those governmental agencies.

fast

In one instance plaintiff recalls being at home when agents of the United States Secret Service came to our door about a letter that Eleanor Roe Munzer had wrote to the President of the United States that was characterized by the Tampa Secret Service Agents as being a very strong letter which they then proceeded to make inquiries of her about the content of the letter which she had apparently sent out without this plaintiffs knowledge as a result of plaintiff as a result of plaintiff current voter disfranchisement serves as a bar to plaintiffs access to Florida state court in a capacity of representative capacity in any wrongful death suit under current Florida law which forecloses plaintiffs access to the courts for redress surrounding the trauma suffered by the plaintiff a result of her deliberately caused death.

*At the crash scene* aside from the apparent lack of willingness of the Florida Highway Patrol to properly investigate the deliberate June 12, 2003 crash and that defendant Bush's brother Governor Jeb Bush's has full authority over the Florida Highway Patrol it has now been discovered that plaintiffs request to Jeb Bush the Governor of Florida to order an investigation into the cause of the June 12, 2003 crash was sent back to the Florida Department of Law Enforcement the very same agencies named

9.

as defendant in plaintiffs 1999 challenge to the constitutionality of the Florida Sex Offender registration laws of who was then task with making a reply to my letter to the Governor it has been which was then it was conveniently given to a FDLE officer about ready to retire in order to thwart the discovery of the conspiracy involving Florida officials .

Plaintiff allege that ( Tampa ) defendant Porcaro ( the alleged witness) is responsible for coordinating the movement of automobiles involved in crashing into plaintiffs car) defendant Louis A. Porcaro is named as a co-defendant with co-defendant Brandi Spahr in a related case pending before the district court for the Middle District of Florida Tampa Division case no. 8:04- 1648-27-MSS facts are that ( Tampa defendant Porcaro bears a relationship by way of marriage of a Temple Terrace, FL relative to linking alleged witness Porcaro to defendant FHP trooper Christopher Wells and as a result of another marriage between his Providence Rhode Island relative of alleged witness Porcaro provide close nexus linkage to a relationship to ( Tampa defendant) FHP officer Thomas Knight Commander in charge of Florida Highway Patrol Troop C and in that position and was supervisor over named as co- defendant to of the Tampa

defendant FHP officer Christopher Wells that arrived on the scene of the deliberate June 12, 2003 automobile crash. Additional discovery at bare minimum but nevertheless it does serve to links FHP trooper Wells to Tampa defendant Brandi Spahr the driver of the car that deliberately crashed into plaintiffs car in an act of vigilante retaliation against plaintiff. In short all parties at the accident scene knew each other the with exception being plaintiff loved-one Eleanor Roe Munzer.

In addition it will be evidenced that another Troop C FHP trooper Dan Cole is a relationship to Tampa Department of Justice civilian employee Steve Cole and it verified that the insurance adjuster for (Tampa) defendant Sparh insurer Direct General is a Memphis, TN neighbor to the relative of DOJ employee Steve Cole.

## ARGUMENT IN OPPOSITION

### I. LEGAL STANDARDS

The liberal pleading requirements of Rule 8 ( a ) demand only a " short and plain statement of the claim . Under the motion to dismiss standard factual allegations ,once pled, must be accepted as true . See *Jenkins v. McKeithen*, 395U.S. 411 , 421-22 (1969). compare *Crawford -El v. Britton* , 523 U.S. 574, 598 ( 1998).

11.

Although there is no heightened pleading standard in qualified immunity cases , a district court has the discretion to ask that a plaintiff to "put forward specific ,nonconclusory factual allegations that establish improper motive.

## II. PLAINTIFF HAS STATED A ACTIONABLE FIRST AMEMDMENT RETALIATION CLAIM FOR WHICH THE COURT HAS JURISDICTION

In *Constantine v. Rectors and Visitors* citation omitted a First Amendment retaliation case that court held : "The First Amendment right of free speech includes not only the affirmative right to speak , but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 2002 F.3d. 676,685 A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some type of action that adversely affected her first Amendment rights and ( 3) there was a casual relationship between her protected activity and the defendants conduct .Id at 686. See also *Trulock v. Freech*, 275 F 3d. 391,404-05 (4th Cir. 2001)( holding that the plaintiff adequately alleged First Amendment retaliation based on government officials response to his publication of an article critizing the FBI and other

federal agencies)see <u>Suarez Corp. Indus. v. Mc Graw</u> . Id.

## II PLAINTIFF HAS STATE A CLAIM THAT WITHSTANDS ABSOLUTE AND QUALIFIED IMMUNITY

The Supreme Court in <u>Gomez v. Toledo</u>, 446 U.S. 635 (1980) held that qualified immunity is an affirmative defense that the defendant official has the burden of pleading. The Court reasoned that section 1983 requires only two allegations to state a claim for relief, namely,(1) that the plaintiff was deprived of a federally protected right, ( 2.) that the person who deprived the plaintiff of the right acted under color of state law.

The Court in Gomez further held [T]his Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question. Since qualified immunity is a defense , the burden of pleading it rest with the defendant See Federal Rule Civ. Proc. 8(c)(defendant must plead any " matter constituting an avoidance or affirmative defense")...
It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith.

13.

*The first step in analyzing whether qualified immunity exists is to determine whether the plaintiff has alleged a violation of a statutory or constitutional right.* Seigert v. Gilley, 500 U.S. 226, 231(1991); see also: County of Sacramento v. Lewis, 523. U.S. 833 ,841 n.5 (1998) *(noting that if courts were to rule on qualified immunity without determining the constitutionality of the challenged conduct, "standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals").*

In Wiley v. Doory, 14 F. 3d 993 , 995 ( 4th Cir. 1994) (internal quotations omitted) the court (quoting Prichett v. Alford , 973 F. 2d 307,312 ( 4th Cir. 1992)); see also Anderson v. Creighton, 483 U.S. 635, 639-41 (1987) affirmed other court holdings that:

(The Contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). This does not mean that an official will be protected by qualified immunity unless the very act in question has previously been held unlawful. Anderson, 483 U.S. at 640. Rather the unlawfulness must be apparent in light of pre-existing law. *Id.*

14.

Ordinarily, a complaint should not be dismissed for failure to state a claim under *Federal Rule Civil Procedure 12(b)(6)* unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief, see *Conley v. Gibson*, 355 U.S. 41,45-46(1957) see also; *Labram v. Havel*, 43 F.3d 918,920(4th Cir.1995). Qualified immunity shields governmental officials from civil liability " insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Immunity applies to "all but the plainly incompetent or to those who knowingly violate the law." Re *Harlow*. *Id.*
It is well established that a public official may not misuse his power to retaliate against and individual for the exercise of a valid constitutional right. *Suarez v. McGraw*, 202 F.3d 676,685( 4th Cir. 20000); accord *Block v. Ribar*, 156 F.3d 673,678 (6th Cir. 1998). Government officials performing a discretionary function are immune from liability for civil damages unless (i) the officers conduct violated a federal statutory or constitutional right; (ii) the right was clearly established at the time of the conduct ;and (iii) an objectively reasonable officer would have understood that the conduct violated that right .

15.

*Milstead v. Kibler*, 243 F. 3d 157,161 (4th Cir. 2001) citing *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999)). an individual may bring a civil suit against a federal officer for damages stemming from a constitutional violation. See also: *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388( 1971).

Respectfully submitted,

*[signature]*

CARL JACKSON
112 West Stanley Street
Tampa, Florida 33604
813-380-8757

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the above document has been furnished via fax and U. S. Mail on this the 30th day of December 2005 United States to John F. Henault , Assistant United States Attorney ,555 4th Street, NW  Washington, DC 20530.

*[signature]*

CARL JACKSON

16.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARL JACKSON

                      CIVIL ACTION NO. 05-1856(RJL)
    Plaintiff,

V.

GEORGE W. BUSH , Et, Al.,

    Defendants.

## ORDER

This matter comes before the Court on plaintiff's motion in opposition to defendants ' motion to dismiss. After considering the relevant pleadings , applicable law, and the record herein it is hereby ORDERED that plaintiffs motion in opposition is GRANTED. It is further ORDERED that defendant's motion to dismiss is hereby DENIED.

                                          Richard J. Leon
                                          United States District Judge

Copies to: Carl Jackson
Pro Se Plaintiff

John F. Henault
Unites States Attorney