UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Carl Jackson                              )
                                         )
       Plaintiff,                       )
                                          )
          v.                            )    Civil Case No. 05cv1856 (RJL)
                                          )
George W. Bush, et al.                     )
                                          )
       Defendants.                      )

## MEMORANDUM OPINION
(September **9**, 2006) [#6]

Plaintiff Carl Jackson, proceeding *pro se*, brings this suit against President George W.

Bush; his deputy Chief of Staff and advisor, Karl Rove; former Attorney General of the

United States, John Ashcroft; "his current successor," Alberto Gonzales; and I. Lewis Libby,

former Chief of Staff to Vice President Dick Cheney, alleging various violations of the

United States Constitution. Currently before the Court is a Motion to Dismiss by defendants

President Bush and Attorney General Alberto Gonzales.[1] For the reasons set forth below,

the defendants' Motion is GRANTED.

---

[1]    While plaintiff names President George W. Bush, Karl Rove, John Ashcroft, "his current successor," and I. Lewis Libby as defendants in this case, the December 19, 2005 Motion to Dismiss was filed only on behalf of defendants President Bush and Attorney General Gonzales, who, as successor to John Ashcroft, was joined in his official capacity on April 24, 2006, pursuant to Federal Rules of Civil Procedure 25(d). None of the other defendants have been personally served. Further, neither President Bush nor Attorney General Gonzales have been served in their individual capacities.

## BACKGROUND

On September 19, 2005, plaintiff filed the instant Complaint, later amended on November 14, 2005, seeking money damages for alleged violations of his rights under the First, Fourth,[2] and Fourteenth Amendments to the United States Constitution. (Am. Compl. ¶ 2.) Though the facts underlying his Complaint are less than clear, plaintiff appears to advance a series of extraordinary allegations centering on an alleged conspiracy that all of the defendants supposedly formed, in both their official and individual capacities,[3] to aid certain individuals seeking revenge against him. (*Id.* ¶¶ 8-9, 13.) In particular, plaintiff alleges that on March 12, 2003, defendants Lewis Libby, John Ashcroft, and Karl Rove entered into a conspiracy under color of law to aid "the vigilante citizens in making a retaliatory strike against plaintiff based upon bad motive and bias towards plaintiff." (*Id.* ¶ 8.) This conspiracy allegedly led to a deliberate car crash on June 12, 2003 that killed plaintiff's "loved-one," Eleanor Roe Munzer. (*Id.* ¶ 9.) The alleged role of defendants Libby, Ashcroft, and Rove in the conspiracy was to remove "said vigilante fears of prosecution for their unlawful acts." (*Id.* ¶ 8.)

Moreover, in plaintiff's second cause of action, plaintiff alleges that on January 21, 2004, in his State of the Union Address, "George W. Bush . . . signified his Presidential

---

[2]      As plaintiff seems to be alleging due process violations under the Fifth Amendment, and makes no unlawful search or seizure claims that would fall under the Fourth Amendment, the Court will presume that plaintiff intended to invoke the Fifth Amendment in his Amended Complaint. (*See* Am. Compl. ¶¶ 1-2.)

[3]      Attorney General Gonzales was joined only in his official capacity. *See supra* note 1.

2

approval to the vigilante conduct." (*Id.* ¶ 13.) Plaintiff alleges that the approval was "under the created false illusion of being a purportedly Presidential response to a letter purportedly written by a 10-year old girl from Lincoln, Rhode Island." (*Id.*) According to plaintiff, the mother of the girl "has a close nexus family relationship to relative of Florida vigilantes with ties within the Florida law enforcement community." (*Id.*)

On December 19, 2005, defendants President Bush and Attorney General Alberto Gonzales (hereinafter "defendants") moved to dismiss plaintiff's Complaint in its entirety. Defendants maintain that plaintiff's Complaint is barred by the doctrines of sovereign immunity, absolute immunity, and qualified immunity. (*See generally* Defs.' Mot Dismiss.) For the following reasons, the Court agrees and, defendants' Motion to Dismiss must therefore be GRANTED.

## DISCUSSION

I.    *Standard of Review*

Defendants bring this Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[4] In reviewing a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, and Rule 12(b)(6) for failure to state a claim, the Court must accept all well-pleaded allegations as true, construing them in the light most favorable to the

---

[4]    Defendants also bring their Motion pursuant to Federal Rule of Civil Procedure 12(b)(5). Under Rule 12(b)(5), a claim may be dismissed due to the insufficiency of service of process. Fed. R. Civ. P. 12(b)(5). If dismissing the claim without prejudice due to insufficient service would lead to the refiling of a meritless claim, however, our Circuit has held that it is proper to consider other means of dismissing the case. *See Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369-70 (D.C. Cir. 1997).

plaintiff. *See Kalil v. Johanns*, 407 F. Supp. 2d. 94, 96-97 (D.D.C. 2005); *Menkes v. Dep't of Homeland Sec.*, 402 F. Supp. 2d 204, 207 (D.D.C. 2005).  Moreover, consistent with the leniency afforded *pro se* plaintiffs, the Court must make a concerted effort to discern a cause of action from the record presented if an action is in fact discernable. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Gee v. District of Columbia*, No. 04-1797, 2005 U.S. Dist. LEXIS 17950, at *2 (D.D.C. Aug. 22, 2005).

While the liberal rules of notice pleading mandate generosity in interpreting a complaint, the Court must be mindful that "generosity is not fantasy." *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 253 (4th Cir. 2005).  Thus, when defendants who are sued in their official capacities raise the doctrine of sovereign immunity as a bar to claims brought against them, a plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss. *See Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).

Similarly, when a plaintiff sues a government agent in his/her individual capacity and the defenses of absolute and qualified immunity are raised, that plaintiff must overcome those defenses in order to survive a Rule 12(b)(6) motion to dismiss. *See Olaniyi v. District of Columbia*, 416 F. Supp. 2d 43, 64 (D.D.C. 2006); *Gee*, 2005 U.S. Dist. LEXIS 17950, at *7-9. While the Court is not confined to the pleadings and may consider outside matters when deciding questions of jurisdiction under Rule 12(b)(1), the Court's review in the 12(b)(6) context is limited to the pleadings alone. *See Kalil*, 407 F. Supp. 2d at 96-97.

For the following reasons, plaintiff in this case fails to overcome defendants' Motion to Dismiss under both Rule 12(b)(1) and Rule 12(b)(6).

II.    *The Defendants' Sovereign Immunity Defense*

The doctrine of sovereign immunity bars those suits against the United States that are not specifically waived by statute. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Council on Am. Islamic Rels., Inc. v. Ballenger*, 366 F. Supp. 2d 28, 32 (D.D.C. 2005). Accordingly, claims against a government agent in his/her official capacity are barred by the doctrine of sovereign immunity unless the government specifically waives the immunity, or the actions of the government agent fall within an exception to the immunity rule. *See Clark v. Library of Cong.*, 750 F.2d 89, 103-04 (D.C. Cir. 1984) (holding that the doctrine of sovereign immunity barred a claim for money damages against the Librarian of Congress, in his official capacity, because immunity had not been waived and the exceptions to immunity did not apply).

Here, plaintiff sues President Bush and Attorney General Gonzales in their official capacities under the First, Fourth,[5] and Fourteenth Amendments to the United States Constitution. (Am. Compl. ¶ 2.) Our Circuit has found that Congress has not waived immunity for suits seeking monetary damages that arise under the Constitution. *See Clark*, 750 F.2d at 102-03. In fact, as noted in *Clark*, possible exceptions to sovereign immunity arise only when a plaintiff seeks non-monetary relief. *See id.* at 104. Accordingly, because

---

[5]    *See supra* note 2.

5

plaintiff's Complaint seeks relief only in the form of monetary damages, his claims against

these defendants in their official capacities must be and hereby are dismissed.

III.    *The Defendants' Absolute and Qualified Immunity Defenses*

Pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971),[6] a plaintiff is permitted to bring a suit for damages against a federal official

in his/her individual capacity. *See Christopher v. Harbury*, 536 U.S. 403, 408 (2002). Such

a suit, however, is subject to the defense of absolute immunity for claims against the

President, and the defense of qualified immunity for claims against all other government

officials. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Thus, plaintiff must

overcome these defenses in order to establish that he has stated a claim upon which relief can

by granted by this Court. For the following reasons, plaintiff has failed to do so here as to

both the President and Attorney General Gonzales.

A.    *Absolute Immunity*

As referenced above, the doctrine of absolute immunity serves to bar—

absolutely—suits against the President of the United States, in his individual capacity,

whenever he is acting within the scope of his official authority. *See Nixon v. Fitzgerald*, 457

U.S. 731, 756 (1982) (recognizing "absolute Presidential immunity from damages liability

for acts within the 'outer perimeter' of his official responsibility"); *see also Clinton v. Jones*,

---

[6]    In *Bivens*, the Supreme Court recognized limited situations in which plaintiff could
bring damages claims against federal officials who abuse their constitutional authority. 403 U.S. 388
(1971). *See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66-67 (2001) (explaining the *Bivens*
holding). Thus, though plaintiff brings this suit under 42 U.S.C. § 1983, it is presumed that plaintiff
intended to allege a *Bivens* claim against the defendant federal officials.

6

520 U.S. 681, 694 (1997). Since plaintiff brings this suit against President Bush for actions

he allegedly took "within the scope of his lawful authority," (Am. Compl. ¶ 4), the President

has absolute immunity from this lawsuit in his individual capacity.[7]

B.    *Qualified Immunity*

Similarly, presidential aides, Members of the Cabinet, and other federal executive

officials are entitled to qualified immunity when exercising their discretion in the

performance of their duties. *Harlow*, 457 U.S. at 807. Accordingly, only in cases where an

official violates "clearly established statutory or constitutional rights of which a reasonable

person would have known," can he be denied immunity. *Id.* at 818. Here, defendants

Ashcroft, Rove, and Libby are shielded from liability by qualified immunity[8] because any

connection plaintiff has alleged between defendants and the supposed conspiracy in Tampa

---

[7]    Although plaintiff has yet to properly serve President Bush in his individual capacity with the Complaint and Summons in this case, *see supra* note 1, the Court nonetheless addresses the application of the doctrine of absolute immunity to plaintiff's Complaint should he eventually seek leave of Court to do so. Our Circuit has found that if dismissing a claim for insufficient service of process would lead to the refiling of a meritless claim, it is proper for a District Court to consider other means of dismissing that claim. *See Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 369-70 (D.C. Cir. 1997). Thus, because this Court finds that the doctrine of absolute immunity, as discussed above, serves to bar plaintiff's action against President Bush in his individual capacity, it would be futile for plaintiff to attempt to effect proper service on the President.

[8]    Because President Bush is protected from suit in his official and individual capacities by the doctrines of sovereign and absolute immunity, respectively, and because Attorney General Gonzales was added only in his official capacity as a defendant in this case, *see* Fed. R. Civ. P. 25(d), a qualified immunity defense primarily serves to immunize un-served defendants Ashcroft, Rove, and Libby. As stated above, however, defendants Ashcroft, Rove, and Libby have yet to be properly served in this matter and thus, have not formally moved to dismiss plaintiff's Complaint against them. *See supra* note 1. Nonetheless, this Court finds that the doctrine of qualified immunity, as discussed above, serves to bar plaintiff's action against defendants Ashcroft, Rove, and Libby in their individual capacities and need not afford plaintiff any further opportunity to properly serve these defendants. *See supra* note 7; *Simpkins*, 108 F.3d at 369-70.

is fanciful at best.[9] Moreover, applying *Harlow*, it is not reasonable that defendants would have known of the constitutional and statutory rights plaintiff alleges they violated. Finally, the mere allegation by plaintiff that these current and former government officials entered into the supposed conspiracy because of "bad motive and bias towards plaintiff" (Am. Compl. ¶ 8) is not enough to survive a defense of qualified immunity. *See Harlow*, 457 U.S. at 818.

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS defendants' Motion to Dismiss with prejudice. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[9]     In his Amended Complaint plaintiff fails to allege any discernable unconstitutional conduct by defendants. Though he does go into far more detail in both his original Complaint and in his Opposition to Defendant's Motion to Dismiss than in his Amended Complaint, those stories are dramatically different from each other and do not allege any reasonable connection between any of the defendants and the alleged conspiracy in Florida.